1                    UNITED STATES DISTRICT COURT

2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3    ROBERT L. PARKER, Ph.D., an      )
     individual,                      )
4                                     )  No.  3:24-CV-0518-JES-DDL
              Plaintiff,              )
5                                     )
     v.                               )  November 6, 2024
6                                     )
     CITY OF SAN DIEGO, ET AL.,       )
7                                     )  Courtroom 4B
              Defendants.             )
8    _____)  San Diego, California

9

                    TRANSCRIPT OF PROCEEDINGS
10                      (Motion Hearing)

11

12      BEFORE THE HONORABLE JAMES E. SIMMONS JR., DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22   COURT REPORTER:        AMANDA M. LeGORE
                            RDR, CRR, CRC, FCRR, CACSR
23                          U.S. District Court
                            333 West Broadway, Suite 420
24                          San Diego, CA 92101
                            amanda_legore@casd.uscourts.gov
25
     Reported by Stenotype:  Transcribed by Computer

```
 1   APPEARANCES:

 2   PRO SE:                ROBERT L. PARKER
                            Robert Parker, Ph.D.
 3                          5468 Collier Avenue
                            San Diego, CA  92115
 4                          (505)554-6507
                            robertlewisparker@gmail.com
 5

 6
     FOR DEFENDANT CITY OF
 7   SAN DIEGO:             MANUEL ARAMBULA
                            Office of the San Diego City Attorney
 8                          1200 Third Avenue, Suite 1100
                            San Diego, CA  92101
 9                          (619)236-6486
                            marambula@sandiego.gov
10

11

12   FOR DEFENDANT SDSU
     Police Department:     TIM VANDEN HEUVEL
13                          California Department of Justice3
                            Office of the Attorney General
14                          600 W. Broadway, Suite 1800
                            San Diego, CA  92101
15                          (619)738-9095
                            tim.vandenheuvel@doj.ca.gov
16

17

18

19

20

21

22

23

24

25
```

1                    (Wednesday, November 6, 2024; 9:02 a.m.)

2

3                         P R O C E E D I N G S

4

5          THE CLERK:  Calling matter number 1 on the calendar,

6    24-CV-0518, Parker versus City of San Diego, et al.

7          THE COURT:  All right.  Good morning, everyone.

8          THE ATTORNEYS AND PLAINTIFF PARKER:  Good morning,

9    your Honor.

10         THE COURT:  And do we have a representative from the

11   City of San Diego here?

12         ATTORNEY ARAMBULA:  I do, your Honor.  Manuel

13   Arambula, deputy city attorney.  I'm here substituting in for

14   Ms. Plotkin-Wolff, who is medically unavailable.

15         THE COURT:  Thank you.  I was looking for her and

16   didn't see her.  Thank you.  Good morning.

17         ATTORNEY ARAMBULA:  Good morning, your Honor.

18         THE COURT:  All right.  So this matter is set for two

19   motions to dismiss, one filed by each of the defendants.

20         I reviewed the State's motion to dismiss for the

21   individual defendants, as well as the opposition filed on

22   behalf of Dr. Parker, as well as the reply brief.

23         I reviewed the City's motion to dismiss on behalf of

24   the City as well as the doe defendants, as well as the

25   opposition filed by Dr. Parker in the reply briefs.

1          So my tentative, in light of the motions and the

2     arguments of counsel, is to grant each of the motions to

3     dismiss.  And here are my concerns, and what I want the parties

4     to address.  I'll start with the State individual defendants.

5          Obviously, in order to proceed under the theory of

6     prosecutorial misconduct, it must be shown that the defendants

7     acted without probable cause for the arrest.

8          The second amended complaint establishes probable

9     cause within the second amended complaint.

10          I know there's this theory that the -- Dr. Parker has

11     advanced that there's no legal theory -- there's no legal

12     support for this theory.  That in order for an individual to be

13     given notice that they must leave the campus and cannot return

14     within ten days, they have to be given notice immediately while

15     they're on campus.  There's no legal support for that theory.

16     There is no case -- not a single case cited to support that

17     theory.  And that advances the position where somebody can go

18     and create a nuisance on campus -- for lack of a better term --

19     flee before they're contacted by law enforcement and then

20     provided notice later; and say, well, you never notified me

21     while I was on campus, therefore this notice is not valid.

22          So there's no legal theory to support that.  In fact,

23     the legislature could have wrote that within the statute but it

24     wasn't.  So that is not a sufficient legal theory that has been

25     advanced to the Court.

1          And based on the arguments in the second amended

2     complaint, it appears that there was indeed probable cause,

3     based on the notice provided and based on the alleged violation

4     of that notice.

5          And for the Court, secondarily, the second amended

6     complaint lists facts that were in the case that were already

7     adjudicated.  There was a case filed in 2020 involving a 2019

8     incident.  That case was already adjudicated as pending before

9     the Ninth Circuit.

10         There are statements throughout the second amended

11    complaint regarding individual officers' actions in that

12    underlying case which should not and are not before this Court.

13    Another court has already decided all of those issues.

14         I know Dr. Parker has appealed the grant of summary

15    judgment -- the granting of summary judgment in that case.  The

16    Ninth Circuit will ultimately decide that issue.

17         This Court will not litigate a case that has already

18    been litigated.  So even if the Court were to proceed, frankly,

19    every reference to the prior litigated case would be stricken

20    because that's not part of this case.  It cannot be part of

21    this case since it's already been litigated.

22         And, to that point, there are several officers who are

23    mentioned as individual defendants that did not have any role

24    at all in the arrest of -- or prosecution in this case.  So

25    I -- I don't see any theory on which -- upon which the

1    plaintiff can go forward in regards to those officers.

2         Second, in regards to the City, there was the -- the

3    whole argument for *Monell* liability is that the complaint was

4    not signed.  The City has submitted a copy of the signed

5    complaint.  And then the argument changed, and it was not part

6    of the argument in the second amended complaint -- or not

7    stated in the second amended complaint.  But the argument

8    advanced in the opposition is that the signature is not

9    legible.

10        Well, that's not an issue for this Court to decide.

11   The complaint must be signed.  There's no requirement that

12   somebody be able to read the signature in regards to any

13   individual that signed it.  There's no legal requirement.  In

14   fact, the way these complaints are written, have been written

15   in both state court as well as federal court for decades.  And

16   no court has ever ruled that these complaints, the description

17   of the charges as well as the signature being legible, is

18   required.  So -- so I don't see a policy that has been

19   affected -- effectively argued or mentioned in the second

20   amended complaint.

21        And, secondly, I think there's -- if I understand

22   correctly, the argument through the opposition is that -- the

23   argument potentially is that a non-attorney may have signed the

24   complaint.  There's no facts in the SAC to allege any of that.

25   That's an argument advanced for the first time in the

1    opposition.

2           And there's nothing to suggest -- except innuendo and

3    speculation -- that that has occurred.  And the Court cannot

4    proceed with conclusions or speculation.  There must be facts

5    alleged in the second amended complaint upon which it puts the

6    defense on notice in regards to the charges alleged against

7    them.

8           And, secondly, the issue before the Court -- and,

9    frankly, at this point, is whether the Court should grant these

10   motions with prejudice.  I'm inclined to do so.  And I know

11   Dr. Parker's requesting an opportunity to file a leave to amend

12   again in regards to the City defendants, as well as to the

13   state defendants.

14          But the Court needs more information as to what

15   additional amendments could be possible that would cure the

16   deficiencies.  There's no set number of amendments that are

17   allowed.  There's no magic number we get to -- one, two, or

18   three -- in regards to the complaint.  But the Court can freely

19   grant leave to amend, unless amendment would be futile.

20          So I don't know what additional facts can be alleged

21   to cure deficiencies.  I'll hear from Dr. Parker, momentarily,

22   in regards to his request for leave to amend in that regards.

23          But this is the defense's motion.  The defense -- I

24   will hear from them first.  And I don't need to hear any

25   argument.  If you want I can go straight to hearing the

1    opposition.  But we'll start with the defense, and we'll start

2    with the State defendants.

3         ATTORNEY VANDEN HEUVEL:  Your Honor, Deputy Attorney

4    General Stephanie Vollmer is on the line to argue this.

5         THE COURT:  Okay.  And can you hear us okay?

6         THE CLERK:  No, your Honor.  Actually, no.  The line

7    dropped.

8         THE COURT:  Oh, okay.

9         THE CLERK:  So I wasn't aware there was supposed to be

10    another person.

11         ATTORNEY VANDEN HEUVEL:  I'm sorry.  Is she not

12    available?

13         THE CLERK:  No.  Let me see if I can connect again,

14    Judge.

15         THE COURT:  Well, let's start with the City first

16    then, then, and we'll come back to the state.

17         ATTORNEY ARAMBULA:  Your Honor, the only additional --

18    obviously, Manuel, the deputy city attorney for the City of San

19    Diego.

20         The only additional facts that I kind of wish to add

21    to the narrative that the Court's already stated, which I

22    believe is the correct findings based on the allegations in the

23    second amended complaint, are that even if you grant that

24    the -- that the complaint -- that a complaint wasn't signed,

25    the question is what's the remedy there?  What is -- what it's

1    there for is to signify that in fact somebody has reviewed it

2    and in fact has -- alleges that they have properly reviewed it

3    and that the complaint, in and of itself, contains all of the

4    required information.  That's what it is.

5         So even if we assume that it wasn't signed, the remedy

6    isn't that there is some kind of constitutional violation.

7    Which, by the way, hasn't been alleged.  It is just simply to

8    make sure it gets reviewed.  That's the whole purpose.

9         And I don't believe there's been any case that's been

10   cited that even remotely suggests that the failure to sign one

11   is some kind of constitutional violation.  At worst, it's an

12   administrative oversight.  That unfortunately does happen,

13   which is exactly why we have that requirement.

14        Because within the state of California, a complaint --

15   whether an indictment or misdemeanor complaint -- it has to be

16   reviewed for legal sufficiency.  And that person says that, to

17   the best of their knowledge, it is a true and accurate

18   statement of the facts stated therein.  That's what it's there

19   for.

20        And then, secondly, there's -- you know, this argument

21   that there's -- that a non-attorney signed it.  You have actual

22   evidence in front of you, since the Court has already accepted

23   the document signed -- I mean, I'm sorry -- the document

24   submitted as exhibits, that it was actually signed.  Why?

25   Because it is actually --

1    THE COURT:  Excuse me for a second.  I know there is

2    an objection raised for judicial notice.  I haven't granted

3    that yet.  But there was a request for judicial notice, and

4    there was an objection raised in regards to the judicial

5    notice.

6         I do have a copy of the complaint, which is Exhibit 1

7    to the defense's motion to dismiss.

8         I want to give Dr. Parker a chance to address that

9    objection, but it appears that Dr. Parker referenced a

10   complaint within his -- excuse me.  Referenced the misdemeanor

11   complaint that was filed in the state court within his second

12   amended complaint.  So it does appear to be incorporated by

13   reference.

14        ATTORNEY ARAMBULA:  Yes.

15        THE COURT:  I know there's an argument that the state

16   court is an arm of the City, which is completely incorrect.

17   The state court -- San Diego Superior Court is a state agency.

18   It has no affiliation with the City of San Diego, whatsoever,

19   other than the City of San Diego being a prosecutorial agency

20   that files cases with the state court.  It is not an arm of the

21   City.  So if that's the only objection, obviously, that's a

22   baseless objection.  The Court will overrule that.

23        So it does appear to be incorporated within the

24   complaint.  So the Court's tentative is to grant judicial

25   notice in regards to at least the first two documents.  And

1    then we can discuss the third, if necessary, which I don't

2    think really truly are necessary.  And that includes the notice

3    to appear, which is marked as Exhibit 2.  Which, under Penal

4    Code Section -- California Penal Code Section 853.7, in a

5    certain situation, the complaint is not even required as long

6    as there's a notice to appear and it states the charges.  So

7    that's another issue.

8            But I just wanted to interrupt your argument, just to

9    state the foundational issues.

10           ATTORNEY ARAMBULA:  Yes, your Honor.

11           And the only thing I would add to that is I would

12   request that the Court also make a finding that this has

13   been -- that -- that plaintiffs -- or that the complaint has

14   been incorporated by reference.

15           I know that the Court said it reviewed it, and it

16   appears to comply.  But I would just ask the Court to make a

17   ruling on the record whether it's accepting it as also being

18   accepted via incorporation by reference.

19           And at that -- at that, I'll rest, your Honor, and

20   respond to any counterarguments as they arise and as the Court

21   requests.  Thank you.

22           THE COURT:  All right.

23           ATTORNEY VANDEN HEUVEL:  Your Honor, given that

24   Ms. Vollmer is not on the phone, I'm prepared to argue the

25   motion.

1          THE COURT:  Okay.  We're trying to connect with her

2    now.  If you want, I can hear from the --

3          ATTORNEY VANDEN HEUVEL:  It's okay.  Given that she is

4    not here to tender to the Court, it's probably more appropriate

5    that I address the Court in any case.

6          THE COURT:  Okay.  That's fine.

7          ATTORNEY VANDEN HEUVEL:  First off, the Court is

8    correct that the 2020 litigation has been exhaustively

9    litigated, all the way up to the Ninth Circuit Court of Appeal.

10          And the -- the officers -- Mays, Becerra, Hogan,

11    Steckler, and Calvert -- had actually nothing to do with the

12    facts of this case.  And so they've already been granted

13    qualified immunity in the 2020 case.  And so as to those

14    officers, of course, they shouldn't even be inside this

15    complaint.

16          Secondly, with regard to Officers Cruz and McClain,

17    the Court's ruling hits the nail on the head.  There is no

18    authority, whatsoever, that the order to leave campus and not

19    come onto campus for seven days has to be given while the

20    respondent is inside the campus.  And to make that a

21    requirement underneath the statute would defeat the entire

22    purpose of the statute, which is to give the university a short

23    time of peace and quiet while they can figure out what to do

24    about the person who is causing the disturbance inside the

25    campus.

1          So we agree with the Court's ruling 100 percent.  All

2    of the officers, except for Cruz and McClain, shouldn't even be

3    in this complaint.  And as to Cruz and McClain, they did

4    nothing wrong because there was probable cause --

5          THE COURT:  And I know there was an advancement of a

6    qualified immunity argument, as well, in regards to Officers

7    Cruz and McClain.  And it, frankly, was not addressed in the

8    opposition briefing.

9          But once the qualified immunity has been raised as a

10   defense, the burden does shift to the plaintiff to present

11   evidence that would defeat qualified immunity.

12         ATTORNEY VANDEN HEUVEL:  Correct.  And there was none

13   inside the opposition.  And so we would request that the motion

14   be granted without leave to amend.

15         THE COURT:  All right.  Thank you.

16         And I know, also, *Keates v. Koile* -- if I recall the

17   case correctly -- also states that the Court should be hesitant

18   when just ruling on qualified immunity at the motion to dismiss

19   phase because of the limited record.  But, obviously, this is a

20   case where the facts, as laid out, are -- have been -- are

21   sufficient or at least as detailed as they're going to be.  I

22   don't think there's any additional facts about this notice

23   that -- that we can ascertain, other than what has already been

24   stated.

25         Thank you.  Let me hear from the plaintiff.

```
 1              At this time, you can address anything in any order
 2      that you prefer.  I know there's two motions pending.  So --
 3              PLAINTIFF PARKER:  Are we, your Honor, on a time
 4      constraint?
 5              THE COURT:  No.
 6              PLAINTIFF PARKER:  Okay.  Well, initially, the -- the
 7      wholesale dismissal.  In what I'm hearing from the Court, the
 8      Court hasn't understood the complaint at all.  So there's a lot
 9      I need to go through.
10              First of all, there are two components to probable
11      cause for this charge.  One is that the -- the defendant needs
12      to have done something on campus that disturbed the peace of
13      the campus.  And, extensively, in the -- the second amended
14      complaint, I detailed that nothing ever happened in which
15      Parker disturbed the peace of the campus.  And that it was only
16      fabrication that led to this false conclusion that Parker had
17      ever done anything to deter peace on campus.  So in order
18      for --
19              THE COURT:  Let me ask a question about that.
20              And that's related to the 2019 incident, as well as --
21      I know -- well, let me make sure I say this correctly.  There
22      was an incident in 2019.  There's been a lawsuit filed about
23      that, that Judge Lopez handled, that summary judgment was
24      granted.  And I know it's pending before the Ninth Circuit.  I
25      checked the history.  It still has not been ruled on at the
```

1   Ninth Circuit.

2           Post that case -- or I should say, while that case was

3   pending, I believe Dr. Parker went to the university.  I think

4   it's the ARS -- I forget what it's called?

5           PLAINTIFF PARKER:  ARC, A-R-C.

6           THE COURT:  A-R-C.  Thank you.

7           PLAINTIFF PARKER:  Aztec Recreation Center.

8           THE COURT:  Thank you very much.  I appreciate that.

9           To drop off information to the young lady at the front

10  register regarding information that was contained in the police

11  report.  And that's what led to this second incident, for lack

12  of a better term; if I understand correctly.

13          Is that the correct procedural history?

14          PLAINTIFF PARKER:  Correct.  In the complaint, it

15  states, I walked into the lobby.  Said, "Dropping this off."

16  Was in the lobby for a total of nine seconds.  And it happened

17  to be that Ms. Leveron was at the desk.

18          And the -- the police report, asking for prosecution,

19  said it made as a basis for disturbing the peace of campus that

20  Parker's appearance in that lobby for nine seconds, dropping

21  off an envelope, made this lady, Ms. Leveron, scared.

22          There were no underlying of facts stated for why she

23  would be scared.

24          THE COURT:  Isn't that whole incident from 2019

25  underlying --

 1            PLAINTIFF PARKER:  No.

 2            THE COURT:  -- as to why she would be scared?

 3       Because she -- my understanding -- I read that case --

 4  is she felt threatened.

 5            PLAINTIFF PARKER:  And why is the Court saying that

 6  this complaint's statements about those facts being false are

 7  not adjudicable by this Court?

 8            THE COURT:  Well --

 9            PLAINTIFF PARKER:  They weren't adjudicated in the

10  previous case.

11            THE COURT:  Well, I think you're mistaken.

12       You spend a lot of time in the second amended

13  complaint detailing the statements and the police reports made

14  by, for example, Jonathan Becerra in 2019.  You spend a lot of

15  time in paragraphs 14 through 20 -- through 30 -- actually,

16  goes to 47.  All of those paragraphs regarding incidents that

17  occurred prior to this notice of -- or this incident even

18  occurring.  All of those paragraphs reply -- refer to the prior

19  incident.  None of them require (phonetic) to the day you

20  dropped off the document to the ACR or the notice that was

21  provided.

22       So what relevance to this case does those

23  statements -- paragraphs 14 through 47 -- have to this case?

24            PLAINTIFF PARKER:  Thank you, your Honor.  Yes.  And

25  the fact that the Court is asking this question lets me

1    understand that, in fact, the Court does not understand the

2    complaint.

3            In 2019 --

4            THE COURT:  We're not going to re-litigate that issue.

5    I just wanted to know, why are these paragraphs relevant?  I'm

6    not going to argue issues that have already been decided by

7    another court.

8            PLAINTIFF PARKER:  Those issues have not been decided

9    by another court.

10           THE COURT:  Yes, they have.  There -- the issues of

11   his acts in regard to the 2019 incident have been decided in a

12   summary judgment motion.  And then it's currently pending

13   before the Ninth Circuit.  So I don't have any authority to

14   address that either way because it's pending before the Ninth

15   Circuit.

16           PLAINTIFF PARKER:  I would like to address that.

17           THE COURT:  And I don't want to go into the facts.  I

18   just want to know why are these -- why are these paragraphs

19   relevant to the February 2020 notice and prosecution?

20           PLAINTIFF PARKER:  I would like to address why they're

21   relevant.  I would also like to argue that the Court is wrong

22   about those facts having been adjudicated.

23           THE COURT:  Well, I'm not going to -- I'm the judge,

24   so I'll decide what's argued in the courtroom today.  I just

25   want to know why they're relevant to the 20 -- February 2020

1   arrest and alleged prosecutorial misconduct.

2          PLAINTIFF PARKER:  Okay.  I -- for the record, I would

3   just like to note that I object to being unable to argue that

4   point.

5          THE COURT:  Your objection is noted, and it is

6   overruled.  And please address my question.

7          PLAINTIFF PARKER:  Yes.  In -- in the 2019 incident,

8   Sergeant Dequito was intoxicated.

9          THE COURT:  Once again, I'm not going to go into the

10  facts.

11         I'm asking why are they relevant to the arrest on

12  February of 2020?  I'm not going to go into the facts of that

13  case.  A judge has already ruled on that case, on the

14  underlying conduct of the officers in that case.  I'm not going

15  to hear the facts.

16         What did Jonathan Becerra do, in February of 2020,

17  that makes him liable for prosecutorial misconduct?

18         PLAINTIFF PARKER:  Jonathan Becerra wrote in his

19  report false statements about Parker's treatment of Leveron.

20         THE COURT:  In February 2020?

21         PLAINTIFF PARKER:  In -- in 2019 --

22         THE COURT:  Okay.  So --

23         PLAINTIFF PARKER:  He -- may I finish one sentence,

24  please?

25         THE COURT:  No, you cannot.  If you're not addressing

1  my question, we'll move on to Carrie Hogan.

2         What did Carrie Hogan do in February of 2020 that

3  makes her liable for prosecutorial misconduct?

4         PLAINTIFF PARKER:  Carrie Hogan falsely reported

5  Parker's interaction with Leveron.

6         THE COURT:  In February 2020?

7         PLAINTIFF PARKER:  Hogan was not involved in the

8  February 2020 incident.  But if I go back to Becerra, Becerra

9  was involved in the February 2020 incident.

10         THE COURT:  In February 2020, what did Becerra do?

11         PLAINTIFF PARKER:  Becerra investigated the

12  Parker-Leveron contact in February 2020, if I understand right.

13  And that might not be in the complaint, and I offer that by

14  amendment.

15         THE COURT:  Okay.  So -- because I didn't see that in

16  the complaint.

17         So he took part in some investigation that led to the

18  notice being provided, if I understand the argument today?

19         PLAINTIFF PARKER:  Yes.

20         THE COURT:  Okay.  And what about norm -- I'm sorry.

21  Tracy Steckler.

22         PLAINTIFF PARKER:  Tracy Steckler investigated the

23  2019 incident.  Knew that what she was writing in her police

24  report about the Parker-Leveron interaction was in fact false

25  reporting.

1          THE COURT:  What did she do in regards to the

2   February 2020 incident?

3          PLAINTIFF PARKER:  She -- knowing that her -- that the

4   facts that she had were in fact based on false police reports,

5   she appeared at Parker's home and delivered notice not to come

6   to campus.

7          THE COURT:  And was she part of the arrest of

8   Dr. Parker and subsequent prosecution?

9          PLAINTIFF PARKER:  As far as I know -- I don't know.

10          THE COURT:  And how about Anthony Calvert?

11          PLAINTIFF PARKER:  Calvert also appeared to deliver

12   the notice.

13          THE COURT:  And was he part of the subsequent arrest

14   of Dr. Parker and subsequent prosecution?

15          PLAINTIFF PARKER:  I don't know.

16          THE COURT:  And I believe Officer McClain was the

17   officer who did arrest Dr. Parker.  Correct?

18          PLAINTIFF PARKER:  Yes.

19          THE COURT:  All right.  And I -- let me allow you to

20   continue your argument.  I know I've asked you questions,

21   interrupting your argument.  I want to give you a chance to

22   continue your argument addressing the February 2020 incident.

23          PLAINTIFF PARKER:  Okay.  Just repeating my objection

24   that the 2019 incident is relevant.  And I would like to argue

25   that it has not been adjudicated.

1          THE COURT:  Okay.  I note your argument -- I note your

2    objection for the record.  Let's move on, please.

3          PLAINTIFF PARKER:  Okay.  This argument that the --

4    that the statute doesn't say that it can be applied later and

5    off campus, that's -- that's an argument that can be applied to

6    almost any statute.  That is, police can choose to apply it

7    using authority that's not given, and then argue that the

8    statute doesn't say I can't do that.  And so that -- that's all

9    I have to say on that argument.

10          THE COURT:  Let me ask.  Because normally, when

11    there's a -- a motion to dismiss that's filed in regards to

12    legal arguments that are made based on case law and statutory

13    authority, the Court wants to know if there's a -- authority

14    that suggests the opposite of what the argument has advanced.

15          And I understand your argument and the position you

16    take.  Do you have any legal authority, any cases that have

17    been decided in the California appellate courts or California

18    Supreme Court that supports and advances the theory you're

19    asking the Court to adopt today?  Because you didn't cite any

20    in your opposition.

21          PLAINTIFF PARKER:  In a similar way that I wouldn't

22    have -- be able to provide authority that one cannot be

23    arrested for jaywalking by looking across the street, I don't

24    have any case that says one cannot be -- cannot be told to do

25    something that the statute has -- gives the police no authority

1  to tell somebody to do.

2      THE COURT:  And just so you know, there are cases --

3  appellate court cases that does discuss and define jaywalking.

4  So I don't think that's a great analogy that helps you, if

5  that's your argument.

6      PLAINTIFF PARKER:  Well, I don't have one today,

7  though.

8      THE COURT:  All right.  And you can continue with your

9  argument in regards to the next point that you would like to

10 address.

11     PLAINTIFF PARKER:  Okay.  We still have not -- I still

12 have not completed the argument on the fact that there was no

13 disturbing the peace on campus.  And that -- that Officer

14 McClain's complaint, put forward to the City, does not in fact

15 state enough information to have probable cause that Parker

16 disturbed the piece on campus in February 2020.

17     Moving on to the next point.

18     The argument is not that the City's -- the City's

19 complaint is not legible in signature.  The argument is in fact

20 that it's not a signature at all, in that it's not an

21 identifiable name in which a person takes a responsibility,

22 puts themself forward as the person who's made the assessment

23 to -- to make this decision.  And a person who puts -- puts

24 themselves susceptible to the safeguards of -- of a watchdog.

25 Safeguards of professional conduct.  Safeguards of a judge

1    knowing, perhaps, that this is a prosecutor who repeatedly

2    sends in cases with no probable cause.   There's no person

3    there.   There can't be a signature if there's no person.   And

4    even if you go to the Black's Law Dictionary and the definition

5    of a signature, it references a person.   And there's no person.

6    That's the argument.

7         I don't care that it's a squiggle that's not legible.

8    Counsel's signature was not legible as Ms. Stacey Plotkin's.

9    Okay?   But her name was written underneath it.

10        The argument is it's not a signature at all.   And

11   they're putting forth this document stating that somebody has

12   done a thing.   But there's no somebody.   Okay?

13        THE COURT:   Let me ask this.   Because this goes back,

14   once again, to legal argument.

15        I've been involved in the -- both state and federal

16   court in criminal cases for over 15 years.   And in every case,

17   a complaint is signed by an individual from the prosecutorial

18   agency to justify that they reviewed it, and there's sufficient

19   information, at least, to bring a case and there's probable

20   cause.

21        I have never seen a single appellate or U.S. Supreme

22   Court or California Supreme Court, for that matter, state that

23   there must be a printed name underneath to make the signature

24   legible, so they can identify the person who signed it.   If you

25   have such a case, I am welcome to receive it.   Because the

1    argument you're making is that not only must -- you're making a

2    legible argument, even though you're not making a legible

3    argument.  Because you're saying you should be able to know

4    what the person's name is who signed it.  Meaning, if the

5    signature's not legible, the persons's name should be printed

6    in another way that is legible.  So you're making a

7    quasi-legible argument by saying you should be able to identify

8    the person who signed it.

9         There's not been a single case in both the California

10   appellate courts or the U.S. Supreme Courts or the Ninth

11   Circuit that has stated that position.  So if you have a case

12   that suggests otherwise, I am more than willing to receive it

13   and adopt the position to the argument you're making.  But I

14   haven't seen a single case that states that.  Because this is

15   how it's done in every single case, and millions of cases that

16   I have seen over the last 15 years.

17        So, once again, if you have legal authority to support

18   your position, please provide it to the Court.

19        PLAINTIFF PARKER:  What I'm hearing is the Court

20   arguing that this is the way we've always done it.  And I don't

21   have an argument against that.  This might be the case that --

22   that establishes that a signature needs to be a signature, in

23   terms of identifying a person.

24        THE COURT:  So it needs to be legible.  That's what

25   you're arguing.  And there's -- please provide me the legal

1 authority that supports your position.

2         PLAINTIFF PARKER:  I'm not making that argument, your

3 Honor.  You're -- the Court is interpreting this as a

4 legibility argument, and I'm not making that argument.

5         THE COURT:  Okay.  Well, give me the legal authority

6 that supports your position that the signature must be

7 identifiable.

8         PLAINTIFF PARKER:  That would be, first of all,

9 *Black's Law Dictionary*.

10         THE COURT:  *Black's Law Dictionary* is not a

11 statutory -- it's not binding authority on the Court.  So I

12 need a case law or a statute --

13         PLAINTIFF PARKER:  Okay.

14         THE COURT:  -- by either California or U.S. -- or

15 Congress that states that a signature must be identifiable.

16         PLAINTIFF PARKER:  My argument is I don't think I need

17 to make that argument.

18         THE COURT:  Okay.  Well, you have not addressed that

19 issue.  And please make your next point.

20         PLAINTIFF PARKER:  The Court makes the point that

21 the -- this wasn't even put forward by an attorney.  It was

22 argued, for the first time, on opposition.  And I think that's

23 putting a burden on plaintiff that need not be there.  And that

24 is, the -- the complaint argues that the -- the second amended

25 complaint argues that -- argues that the criminal complaint

1    does not exhibit that anybody who was qualified to make a

2    determination that this -- this criminal complaint should be

3    filed actually did so.

4          And the -- the words in the complaint itself, those

5    being a -- a changing of all of the "ors" to "ands," this is

6    not something any competent attorney would ever do.  At least

7    not something any attorney would ever do.  It's -- the words

8    I've used, in referencing the cops, it's inane.  It's --

9    it's -- it exhibits incompetence.  And that's evidence in the

10   complaint that this -- that this criminal complaint was not

11   filed by an attorney.

12         And the Court must accept the -- the facts alleged in

13   the complaint at this stage in the litigation.

14         THE COURT:  The facts, yes.  Speculation and innuendo,

15   no.  I cannot accept legal conclusions phrased as facts.

16   The -- the law -- authority is clear.

17         And here's a question, really.  I -- I understand your

18   arguments.  I read your arguments in regards to your opposition

19   that you filed.  And I noted one particular thing that was

20   very -- well, frankly, concerning to the Court.

21         Your entire opposition to both motions, you don't cite

22   a single case or legal authority to support your legal

23   arguments.  And without any legal authority to support them,

24   they're, frankly, just asking the Court to make legal

25   conclusions based solely on you as the source of the legal

1    authority.  I need legal authority from either California
2    appellate courts -- since, obviously, this is a statute under
3    California state law -- or from the Ninth Circuit or the U.S.
4    Supreme Court that supports the legal arguments you're making.
5    Because you alone as the source for these legal arguments is
6    not sufficient.  I am bound to follow binding Ninth Circuit
7    authority and U.S. Supreme Court authority.  I can't stray from
8    that.  That's my -- that's my obligation.  That's my
9    requirement.
10            Now, you haven't cited any authority to advance your
11   legal arguments.  And you haven't addressed the authority that
12   was cited, like qualified immunity, for example.  You haven't
13   responded -- or you haven't responded with any legal authority
14   to support your arguments against qualified immunity.  So I
15   need some legal authority to adopt the legal arguments you're
16   making.  You can't be the sole source of those legal arguments.
17            PLAINTIFF PARKER:  Two points I would like to address.
18            First of all, yes -- yes, I did address the qualified
19   immunity arguments in the opposition.  And my opposition stated
20   that the -- the argument is not put forward in such a way to
21   detail the conduct of the parties, of -- of the defendants
22   here, that would allow me to then go searching for -- for
23   clearly established legal authority.
24            I -- I don't think they've specified enough to me what
25   it is that they did or what conduct they're saying is

1   protected.  In order to assert the qualified immunity defense,

2   they have to state a conduct that deserves the defense.  And my

3   argument was they haven't done that.

4           The second point is, yes, I haven't provided legal

5   authority.  The Court's obligation is to -- even -- even if the

6   defense puts forward legal authority -- and -- and I think that

7   it doesn't apply.  That it's inapposite, in the words of

8   lawyers.  I don't have to argue against it.  The Court has to

9   get it right.  The Court has to look at the -- the authority

10  put forward by these defendants and determine that it actually

11  applies.

12          And in each of the cases -- I looked at their legal

13  authority and came to the conclusion those don't correctly

14  apply here.  And I can trust this Court to correctly interpret

15  that.

16          Now, I may see, in the Court's ruling, authorities I

17  haven't seen before that explain.  And then, for the first

18  time, I would see those cases and be able to argue either in

19  motion for reconsideration or in an appeal that those are

20  incorrectly applied.

21          THE COURT:  And I want to let you finish.  I don't

22  want to interrupt you when you're in the middle of your

23  argument.

24          PLAINTIFF PARKER:  That's it on those points.

25          THE COURT:  Okay.  Well, and here's the concern.  I

 1    mentioned it in the last motions to dismiss that were filed.

 2          When a legal theory is advanced and the -- an opening

 3    motion to dismiss, it does not address in the opposition, the

 4    Ninth Circuit has decided that if the plaintiff does not

 5    address those arguments in the opposition, it is waived; and it

 6    is -- it is waived for appellate purposes as well.  And there's

 7    a concension (phonetic) or -- or a conceding that argument when

 8    it's not addressed in the opposition.  I stated the legal

 9    authority to support that in the original order I filed in the

10    first motion to dismiss.

11          Qualified immunity, for example, when it is raised as

12    a defense, the burden then shifts to the plaintiff to mention

13    similar cases in regards to the qualified immunity not being

14    applicable based on the underlying facts.

15          You have made a decision that it does not apply.  That

16    is certainly your right to make that decision.  But the Court,

17    obviously, has to address the arguments by counsel.

18          And in the arguments that you make regarding the

19    notice and things of those natures, I can't rely -- as I said

20    earlier -- on just the legal -- you being the sole source of

21    the legal authority.  The Court is bound by Ninth Circuit and

22    U.S. Supreme Court precedent.  And so I need some legal

23    authority to support and advance the legal arguments that are

24    being made.

25          I have interrupted you a lot, so I want to give you a

1    chance to make any final comments you like to make.

2         And, also, when you address your final comments,

3    assuming Court does grant the motion to dismiss, what

4    additional information could you allege when you're asking the

5    Court to grant you leave for further amendment?

6         PLAINTIFF PARKER:  Okay, your Honor.

7         I do think that on matters of law the Court is bound

8    to get the law correct.  That the legal argument is not waived

9    when the defense puts together a -- an incorrect legal

10   argument.  The Court is still bound to look at the case and

11   say, does that make sense.

12        THE COURT:  You are absolutely right.  But if they put

13   together a correct legal argument and you don't address it, it

14   is waived.  That's the issue.

15        PLAINTIFF PARKER:  I didn't see any correct legal

16   arguments, your Honor.

17        THE COURT:  That's where you and I disagree.

18        PLAINTIFF PARKER:  Okay.  Well, I'll see if you rely

19   on their authorities, which I -- I chose not to argue against.

20   I thought they were not correct.  And I'll see -- in the

21   decision that's put forward, I'll see what the Court rulings

22   are.

23        THE COURT:  We will indeed.

24        PLAINTIFF PARKER:  Let's see.  On judicial notice.

25   Another argument I made about the judicial notice is that

1    these -- these -- these documents don't meet the requirement

2    for judicial notice because they cannot be verified.  And the

3    reason they cannot be verified is there's no signature.

4    There's -- there's no way for the plaintiff to go and verify

5    that, indeed, this was put forward by -- by who?  I don't know

6    because there's no identity of the person.

7            And the Court should not take judicial notice of items

8    that can't be --

9            THE COURT:  Let me ask you a question.  What legal

10   authority, what case law or statutes did you -- and you can

11   argue to the Court that says that a document filed in state

12   court cannot -- that the Court -- this Court cannot take

13   judicial notice of it if there is not an identifiable

14   signature?  What case law do you have that makes -- that

15   supports that argument?

16           PLAINTIFF PARKER:  Well, this being the first time the

17   question is posed to me, sitting here today, I can't do that.

18           THE COURT:  Well, it wasn't.  Because this was a

19   request for judicial notice in the opening -- opening motion to

20   dismiss.  And you had -- you were put on notice that this was

21   the request.  You filed your opposition.  You did not state any

22   legal authority.  And you're making a legal argument but

23   without any authority to support it.

24           PLAINTIFF PARKER:  Well, the argument I made was that

25   the legal argument they made didn't apply because the facts

1    didn't -- didn't meet --

2              (Indiscernible due to overlapping speakers.)

3              THE COURT:  -- going to tell me you're incorrect.

4              PLAINTIFF PARKER:  Okay.

5              THE COURT:  So you can continue with your next point

6    about judicial notice.

7              PLAINTIFF PARKER:  Okay.  That's all I'll argue on

8    judicial notice.

9              THE COURT:  And you were going to reply in regards to

10   any additional facts that you could allege if the Court were to

11   dismiss the -- grant the motions and if the Court were to grant

12   leave to amend?

13             PLAINTIFF PARKER:  There was a point that I put into

14   the -- into the opposition.

15             The argument is not so much that the City allowed the

16   filing of the complaints without compliance to the statute,

17   although that's the way it phrased it.  The -- the problem is

18   that they allow the filing of complaints without the review

19   that is required by the Sixth Amendment.

20             I'm sorry.  The -- I might have that right.  I've

21   stated it in the -- in the arguments.

22             And that goes along with my argument that the Court

23   has stated, essentially, this is the way it's -- it's always

24   been done.

25             THE COURT:  That's incorrect.  See, you're

 1  misinterpreting my position.

 2          PLAINTIFF PARKER:  We feel the same way.

 3          THE COURT:  My position is there is not a single

 4  appellate or U.S. Supreme Court case that this Court has seen,

 5  in over 15 years, that suggests it must be done the way you are

 6  advocating it must be done.

 7          And if there is a case, I am open and willing to

 8  receive it in order to adopt the position you're asking me to

 9  adopt.  You didn't present it in your opposition.  But if you

10  present it today, I am willing to accept that; even though it

11  wasn't presented to the opposition.  Technically, you cannot

12  make new legal arguments in the court hearing that were not

13  made in the opposition.  But I'm going to give you that chance.

14  If you have it, I'm willing to adopt that, despite what,

15  technically, I should not allow.

16          PLAINTIFF PARKER:  I've lost the point, your Honor.

17  There -- I have got a slew of notes here on each defendant,

18  with paragraphs outlining exactly how I detailed their

19  involvement in the second amended complaint.

20          But, at this point, I think what I'm going to do is

21  rest, wait to see the Court's ruling, and then decide if I'll

22  proceed by maybe a motion for reconsideration or an appeal to

23  the Ninth Circuit.

24          THE COURT:  All right.  So I just want to give you one

25  final opportunity.

1          Are there any other -- additional facts that you

2    wanted to suggest could be argued if you were -- if you were

3    granted leave to amend?  Because the Court has to know that in

4    order to decide whether it should -- if the Court proceeds with

5    its tentative, whether to dismiss with or without prejudice.  I

6    want to give you one final opportunity to address that

7    question.

8          And while you're thinking about that, let me ask one

9    final question to make sure I'm clear.

10         Are you arguing *Monell* liability based on a violation

11   of California Penal Code Section 740?  Or are you arguing it

12   based on other -- some other constitutional right that was

13   violated?

14         PLAINTIFF PARKER:  On a constitutional right.

15         THE COURT:  Which right?

16         PLAINTIFF PARKER:  The right to be clearly aware of

17   the charges being made against one, and the right,

18   essentially -- at -- at the highest level, it's the right to be

19   free from prosecution without probable cause.

20         THE COURT:  Well -- because I'm looking through your

21   complaint, and I don't see which right that you're alleging

22   under -- I see the references to Penal Code Section 740, which

23   cannot be a basis for a 1983 action.

24         PLAINTIFF PARKER:  And it is not the basis for the

25   1983 action.  It's -- it's -- it's the underlying policy that

1  led to prosecution without a -- without probable cause.

2       THE COURT:  I get the argument.  I'm saying where is

3  that in the second amended complaint?

4       PLAINTIFF PARKER:  It's --

5       THE COURT:  Point to the paragraph, please.

6       PLAINTIFF PARKER:  Yeah.  If you'll give me a moment.

7       THE COURT:  Of course.

8       (Pause, referring.)

9       PLAINTIFF PARKER:  Okay.  In paragraphs 115 to 116,

10  the second amended complaint identifies the two alleged City

11  policies.  Also, you know --

12       THE COURT:  And that mentioned California Penal Code

13  Section 740.

14       PLAINTIFF PARKER:  It does.

15       And -- and offered for amendment is to remove that

16  focus on PC 740 as that's -- that's not the overarching reason.

17  A violation of that is not the overarching reason.

18       The policy that is the second one there, policy B, is

19  that the City allows the filing of complaints without the kind

20  of review that would guarantee that -- that there is no

21  prosecution without probable cause.

22       And what the City's policy allows is it allows

23  prosecutors -- or people who aren't prosecutors in any way --

24  to go forward.  It removes the safeguards that would hold those

25  persons accountable.  It allows them to proceed without

1    identifying themself at all.  And it in fact allows them to

2    proceed without any actual individual review because there's no

3    responsibility attached to that.  They can do whatever they

4    want because they aren't "they."  They aren't even a person.

5    They aren't an identifiable person who would have any of the

6    usual safeguards of professionalism that would hold them to the

7    standard of only prosecuting on probable cause.

8              THE COURT:  And what constitutional right does that

9    violate?

10             PLAINTIFF PARKER:  The Fourth and 14th Amendment right

11   to be free from prosecution without probable cause.

12             THE COURT:  All right.  Thank you.  Because I know --

13   I think you're aware, now, that California Penal Code Section

14   740 cannot be a basis for 1983 -- under 1983.  I think you're

15   aware of that now.

16             PLAINTIFF PARKER:  And that's not what was stated.

17   I'm not accusing the City of violating Section 1983 by

18   violating PC 740.  It's -- and I don't need to --

19             THE COURT:  I understand -- I understand you adopted

20   that position now.  But that's not just what you read in

21   paragraph 115.

22             PLAINTIFF PARKER:  And yet that's what I would offer

23   by amendment, and that's what the Court is asking.

24             THE COURT:  Thank you.

25             Anything else you want to --

1          PLAINTIFF PARKER:  Because those are the important

2     parts of -- of the City's policies.

3          And I do want to address that -- the City's argument

4     that we're allowed to do it this way doesn't negate the fact

5     that the way they do it allows prosecution without probable

6     cause.

7          THE COURT:  Okay.  Thank you very much.

8          PLAINTIFF PARKER:  What's that?

9          THE COURT:  I thought you were done.  I'm sorry.

10         PLAINTIFF PARKER:  Oh, let's see.

11         I was responding to your question.  Right?  About --

12    oh, about PC 740.

13         Yes.  I would like to ask, is the Court finding

14    probable cause?

15         THE COURT:  Well, that's not a finding I make at the

16    motion to dismiss phase.  The question is whether the complaint

17    sufficiently satisfied Rule 8 and puts the defense on notice in

18    regards to the cause of action alleged.

19         Obviously, the Court has to assume the facts that are

20    stated as true, at this stage of the proceedings.  But I

21    don't -- that doesn't apply to legal conclusions or

22    speculation.

23         So I'm not making any findings at this point in

24    regards to whether there was or was not probable cause; nor

25    should I, at this stage of the proceedings.

1          PLAINTIFF PARKER:  Okay.  Then I would like to address

2  a particular defendant, and that is Paul McClain.

3          THE COURT:  Paul McClain.  Yes.

4          PLAINTIFF PARKER:  Yes.

5          Paul McClain wrote in his police report that Leveron

6  was scared; paragraph 77 to 79.

7          THE COURT:  Thank you.

8          PLAINTIFF PARKER:  May go as far as 85.

9          THE COURT:  Okay.

10          PLAINTIFF PARKER:  Paul McClain wrote that -- that

11  Parker should not have been there because of a 626 notice to

12  not -- to not be on campus.  And that's a pure fabrication.

13  There was no 626 notice for Parker to not be on campus.

14          There was no reason Parker had any -- there was any

15  wrongdoing or any disturbing of anybody's peace by a

16  nine-second entry into the lobby and setting down an envelope.

17  That 626 violation mentioned by McClain is a pure fabrication.

18          THE COURT:  Okay.  And how does that relate to the

19  subsequent arrest later?  Because it wasn't -- you weren't

20  arrested that day that this report was documented.  Correct?

21          PLAINTIFF PARKER:  No.  But that, perhaps, gave

22  justification to others to believe that --

23          THE COURT:  And that's where we go into speculation,

24  when you use language like "perhaps, gave."  And the Court

25  cannot give --

1          PLAINTIFF PARKER:  Okay.  It's not speculation in the

2    complaint.  It's -- it's stated as fact.  Okay?

3          THE COURT:  I disagree.  But I will let you make your

4    point.

5          PLAINTIFF PARKER:  Okay.  So McClain knew that he was

6    fabricating a reason why Parker's appearance in a place could

7    be interpreted as disturbing the peace of the campus.  Okay?

8          McClain then pointed to -- there's these other police

9    reports that say there's some mystery.  That's in the complaint

10   that he filed to the City attorney.  Yet he -- that's all he

11   did.  All he did was provide a pointer.  Okay?

12         And there's nothing -- there's nothing in those

13   reports that reasonably states that Parker's appearance

14   there -- giving friendly information to Leveron -- was

15   disturbing the peace of campus.

16         What happened here is the -- the campus police and the

17   gym staff -- and I would offer this by amendment -- the chief

18   of police was friends with the director of the gym.  They

19   needed to provide cover for the chief's officers.  They needed

20   this to be Parker's fault.  They used Leveron as a pawn to --

21   to put her in a place to suggest that Parker was aggressive or

22   violent or threatening to this young lady.  And none of that

23   ever happened.

24         And focusing on McClain, he fabricated this statement

25   that Parker was violating the 626 notice by being in the gym at

1    that point.  He didn't give any details that would provide a

2    prosecutor with a belief that Parker was disturbing the peace

3    of campus -- on campus.

4         And that's detailed enough in -- in the second amended

5    complaint to accept Parker's allegations as true and determine

6    that there was no probable cause for an arrest because there

7    was no cause for an initial notice not to return to campus.

8    My -- McClain specifically did that, fabricated evidence.

9         THE COURT:  Okay.  All right.  Thank you very much,

10   Dr. Parker.

11        Would either of you like to reply?  And my question is

12   not necessarily an invitation, but I wanted to give you an

13   opportunity if you wanted to.

14        ATTORNEY VANDEN HEUVEL:  Nothing, your Honor.

15        ATTORNEY ARAMBULA:  Just briefly, your Honor.  I just

16   want to point out that these arguments regarding whether or not

17   the complaint -- they -- they have no place here.  And I'll

18   explain to the Court why.  The issue isn't -- I think what is

19   happening is that plaintiff is complaining the existence of

20   probable cause with the document that records whether or not

21   a -- a prosecutor found probable cause.

22        Nowhere in that set of facts can you find a situation

23   where probable cause didn't exist.  You look at the allegations

24   he makes, and these allegations are, you know, that there was

25   allegedly some kind of violation of his rights.  Which, by the

1  way -- as the Court has pointed out under Section 1983 -- he

2  had to, like, readily identify.  1983 is simply a vindication

3  of a certain constitutional right and against a particular

4  party.  Here, that happens to be the City.

5        What he's talking about -- even if the Court believes

6  everything the plaintiff had to say about this was true,

7  there's still nothing that exists within those set of facts

8  that are outside of a prosecutor's function.  And I think, as

9  the Court well knows, you know, starting with *Imbler v.*

10 *Pachtman*, regarding the United States Supreme Court's finding

11 that prosecutors had absolute immunity -- and that was -- even

12 that was abrogated to a certain degree under *Buckley v.*

13 *Fitzsimmons*.  But in those specific cases -- more particularly

14 under *Buckley* -- what happened is that the Court only limited

15 it to the extent that the actions taken by the prosecutor were

16 outside the scope of a prosecutor's duty.

17       There is nothing here that even remotely suggests that

18 any of the actions were taken outside of a prosecutor's

19 everyday duties.  Because what happens in these specific cases,

20 prosecutors get a number of different cases.  The way it --

21 what it's called is -- I don't know if the Court knows -- and I

22 apologize, if you already know this.

23       But an intake section for a prosecutorial agency, they

24 get a number of different complaints.  A prosecutor reviews

25 them.  And typically what they'll do is they'll get a --

1   they'll look at a complaint and say, well, you know what?

2   Either it's missing an element.  It needs further

3   investigation.  Perhaps sometimes, hey, this isn't probable

4   cause.  And what happens is it gets returned to that

5   investigating agency so they can figure it out.

6          And in this specific case, the reason they're --

7   number one, there isn't a requirement that that person's name

8   appears -- and that's -- that's for a -- for an everyday

9   mundane reason, and that's this:  Prosecutors in an intake

10  section, they come in, they come out, they change.  Sometimes

11  they handle certain duties.  Perhaps like in front of a grand

12  jury.  Sometimes they're assisting in other aspects of the

13  case.  But there isn't a name there because, on any given day,

14  it can change.  That's why the legal requirement is only that a

15  prosecutor review it and a signature.  And despite plaintiff's

16  arguments to the contrary, that's what he's saying; you can't

17  identify it.  You don't need to identify it.  You need to

18  identify that there's a mark that is the sign that somebody

19  signed it and reviewed it.

20         Moreover, in this particular case, in the exhibits

21  that have been produced to you by the City show that that was

22  made under oath.  And nothing we've heard casts any doubt on

23  the fact that that is a genuine document presented to the Court

24  as a -- not only for the truth of the matter asserted --

25  because it's actually a business record conducted in the

1  regular course of business for the -- the City, submitted to

2  the county -- to the county courts, for -- for the prosecution;

3  whether that happens or not.

4          But the issue here that -- I guess, we're -- we're

5  kind of -- plaintiff is trying to bandy about is the issue of

6  conflating probable cause with whether or not a ministerial

7  action was taken in reviewing it.

8          There's no substantive right, even if you grant that

9  it wasn't signed -- which it was.  And this fact -- as I think

10  the Court has noted -- that has been abrogated.  As I've said

11  before, what happens is if it's not signed -- or reviewed, then

12  it just goes through the process again.  But his rights don't

13  change.  And the finding of or lack of probable cause doesn't

14  change because the prosecutor doesn't review it.  So no

15  substantive right has been violated.

16          But, more importantly, I think at the end of the day,

17  even -- as I said before, even if you grant everything that

18  plaintiff said is true, none of the facts here are susceptible

19  to a finding or to a possible finding down the road that any of

20  the actions taken by the prosecutors or the police officer in

21  this -- in this case amount to an arguable constitutional

22  violation.  They just don't.

23          Because I think what -- what plaintiff has argued,

24  repeatedly, is that he disagrees with the facts.  But

25  investigating agencies go -- they ask people.  They gave

1  whether or not -- you know -- you know, how likely the truth of

2  the case is -- I mean, whatever facts they're being told.

3  They -- they -- they write a report.  That report gets

4  submitted to a prosecuting agency.  If it meets the elements of

5  that crime, it's signed off on, and you're off to court.

6      Nothing here that plaintiff has said plausibly creates

7  a situation where he might have a case; moreover, because of

8  prosecutorial immunity.

9      And lastly, Judge, I'll just simply point out that

10  even if you get -- I mean, just setting that aside for a second

11  here, there's been no *Monell* claims.

12      The City, here, is quite literally a defendant.  But

13  there's no -- there's no supervisory liability under 1983.

14  There's no respondeat superior.  If the City is going to be

15  held liable, there has to be some level of -- or there has to

16  be a policy.  Which, quite frankly, I was trying to figure out

17  what the policy was.

18      I made some notes, the policy underlying -- I'm -- I'm

19  confused as to what plaintiff is actually arguing is the policy

20  that somehow connects to a constitutional violation, that then

21  connects to the City's possible liability.  I don't know what

22  it is.  I genuinely don't know what it is.

23      And if we take his word at it, at least some part of

24  his statement before the Court today, it's that the City does

25  not -- I guess -- mandate -- despite evidence to the

1   contrary -- that these complaints are signed.  I -- there's

2   just simply no evidence.

3         And, plainly, if -- now that the Court's accepted --

4   or taken judicial notice of these documents, it's fairly

5   obvious that that in fact is the case.  They are signed.  And

6   that's all that -- that's required under the penal code.

7         Thank you, your Honor.

8         THE COURT:  All right.  Thank you.

9         I want to thank you all for --

10        PLAINTIFF PARKER:  May I respond?

11        THE COURT:  Well, it's their motion.  They had the

12  burden.  That's why I let you go first after they addressed it.

13  So --

14        PLAINTIFF PARKER:  But they brought up a new fact.

15        THE COURT:  Excuse me?

16        PLAINTIFF PARKER:  They brought up new issues.

17        THE COURT:  No, he addressed things that you pointed

18  out.

19        But I'm going to give you a very brief opportunity to

20  respond.  But then I have to give them a chance to respond

21  because they carry the burden on this motion.

22        Very brief.  Do not -- do not argue anything you

23  already argued before.  I'll cut you off.

24        PLAINTIFF PARKER:  Counsel made the point that

25  plaintiff just disagrees with the facts.  That's not what is

1    stated in the second amended complaint.  Plaintiff has clearly

2    stated that these officers knew that the facts that they put

3    forward were fabricated.

4          THE COURT:  Well, that's not argument he addressed.

5    He was addressing solely the arguments regarding the complaint.

6          PLAINTIFF PARKER:  Okay.

7          THE COURT:  He didn't address anything regarding the

8    officers.

9          PLAINTIFF PARKER:  And I would like to mention one

10   more thing.  And that is, he argues a lot of facts of what the

11   inner workings of the court are.  And none of those are in the

12   second amended complaint.  None of those are judicially

13   noticed.  And none of those are put forward in a way that

14   plaintiff could possibly argue against them.

15         I understand that your Honor has been in that office

16   for a long amount of time.  But that -- those details of the

17   inner workings and how things work, those are not part of

18   what's in the second amended -- amended complaint.  Those are

19   not part of the Court's decision.  And as the second amended

20   complaint is -- is stated, it's -- it's within a reasonable

21   reality that there's a -- there's a nonlawyer person in there.

22   It's some -- somebody started this process.  Somebody who is --

23   has no responsibility.  They certainly can't be making a

24   statement under oath when they aren't a person.  When they're

25   not an identifiable person, you can't be making a statement

1    under penalty of perjury.  Who would be penalized?  We would

2    never know.  Okay?

3              THE COURT:  Okay.

4              PLAINTIFF PARKER:  Okay.  Thank you, your Honor.

5              I have been contentious.  I respect the Court fully.

6    I apologize if I've gone overboard.

7              THE COURT:  You don't need to apologize.

8              And, obviously, this is something that is very

9    important to you and to the defendants as well.  So I recognize

10   that.  That's why -- it's the whole reason why I have oral

11   arguments.  To make sure everybody has a chance to address --

12             PLAINTIFF PARKER:  I forgot one thing.

13             THE COURT:  One final thing.

14             PLAINTIFF PARKER:  One thing.  One final thing.

15             And that is in our previous hearing, the Court

16   mentioned that it had reviewed the -- the Court's order in the

17   other case.

18             THE COURT:  Yes.

19             PLAINTIFF PARKER:  In the 2019 case.  In fact, the

20   Court said it reviewed both of them.

21             Well, one of them was a very lengthy and a very

22   anti-plaintiff ruling that was vacated, and it had a lot of

23   detail in there.

24             THE COURT:  I only reviewed orders that were binding

25   orders.  I didn't review orders that were vacated.  Vacated is

1  not an order.

2         PLAINTIFF PARKER:  Okay.  Right.  Right.  That vacated

3  order in fact used the police reports that I am now arguing

4  are -- are fabricated as evidence against me.  And might have

5  been a bad first step further towards --

6         THE COURT:  And I know you addressed some of your

7  concerns in our first hearing.  So, like I said before, any

8  order that has been -- final order the Court can review.  And,

9  obviously, it's persuasive; and it can be used, frankly, as a

10 persuasive authority in the district.

11        But the Court has not reviewed, nor should I review,

12 any order that was vacated.  And, once again, at this stage of

13 the proceeding under the 12(b)(6) motion, the Court must assume

14 that the facts, as alleged, are true, and make all findings or

15 inferences in favor of the nonmoving party.  However, the Court

16 cannot and should not accept legal conclusions couched as

17 facts.

18        The Court cannot consider anything outside of the

19 complaint unless it is incorporated by reference or for the

20 Court to take judicial notice in light of it being incorporated

21 by reference within the complaint.

22        So, Dr. Parker, to -- to the point where you were

23 arguing regarding the statements of how the office works, that

24 is correct.

25        Although I am intuitively familiar -- not from the

1  City attorney but just generally prosecution offices, how they

2  work -- the Court must consider solely the facts from the

3  complaint, any reasonable inferences from it, as well as

4  documents I can take judicial notice of.  And that's what the

5  Court will do, obviously.

6          I allowed Dr. Parker to make some final remarks.

7          Would either party like to respond to anything

8  Dr. Parker has just stated?

9          ATTORNEY VANDEN HEUVEL:  No, your Honor.

10          ATTORNEY ARAMBULA:  No, your Honor.

11          THE COURT:  All right.  Thank you very much.  So the

12  Court will take this matter under submission, and I will docket

13  a written order.  Thank you very much everyone.

14          PLAINTIFF PARKER:  Thank you, your Honor.

15          ATTORNEY ARAMBULA:  Thank you, your Honor.

16          (Conclusion of proceedings at 10:06 a.m.)

17                          --oOo--

18  I certify, by signing below, that the foregoing is a correct
   stenographic transcript of the oral proceedings had in the
19  above-entitled matter this 10th day of December, 2024.  A
   transcript without an original signature or conformed signature
20  is not certified.  I further certify that the transcript fees
   and format comply with those prescribed by the Court and the
21  Judicial Conference of the United States.

22          /S/ Amanda M. LeGore

23      AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

24

25